**Richard VACTOR, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GLENN'S DAIRY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 1997.

Decided Aug. 20, 1997.

Felix J. DeGuilio, Pittsburgh, for petitioner.

No appearance entered for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

Richard Vactor (Claimant) appeals an order of the Workers' Compensation Appeal Board, which affirmed the decision of a workers' compensation judge (WCJ) granting Claimant benefits for a closed period of time, and then suspending and ultimately terminating his benefits.

Claimant was employed by Walter Glenn (Employer),[1] owner of Glenn's Dairy, Inc., as a convenience store cashier. On September 21, 1993, when Claimant was working alone

---

1. The record indicates that Employer did not carry workers' compensation insurance at the time of Claimant's injury. We note that Employers are required to secure workers' compensation insurance either through a private carrier, the State Workmen's Compensation Insurance Fund, or be approved by the Bureau of Workers' Compensation Rating Bureau as self-insured. Employers who fail to carry insurance are subject to criminal sanctions. Section 305(b) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 501(b), states that failure to secure insurance is a third degree misdemeanor; if the failure is intentional, the offense is upgraded to a third degree felony. Every day's violation is a separate offense. Section 305(b) of the Act, 77 P.S. § 501(b).

When an employee of an uninsured employer sustains a work-related injury, the employee is permitted to seek redress under the Act or file a tort suit against the employer. Section 305(d) of the Act, 77 P.S. § 501(d); *Liberty ex rel. Liberty v. Adventure Shops, Inc.*, 433 Pa. Superior Ct. 586, 641 A.2d 615 (1994).

in the store, an armed and masked bandit entered and demanded that Claimant give him money. Claimant tried to comply with the robber's demands and open the cash register, but, afraid of being shot, he was excited and could not release the cash drawer. Although Claimant was behind a plexiglas shield which enclosed the cashier's area, the robber, apparently frustrated by Claimant's delay in emptying the cash register, reached through a small, rectangular opening in the shield and fired two rounds at Claimant. One round grazed Claimant and the other entered his left leg. Claimant managed to call 911 and was, subsequently, transported by ambulance to the hospital. He was discharged from the hospital the day after the shooting.

On November 22, 1993, Claimant filed a claim petition seeking total disability benefits for the gunshot wound to his left leg, and the matter was heard before the WCJ.

At the hearings, Claimant testified as to the facts of the shooting described above. Claimant further testified that he was mentally unable to return to his employment. He explained that he was "too scared to go back" to his job (Notes of Testimony, 4/4/94, at 15; Reproduced Record at 15a), and feared that he might be robbed and shot again. Claimant testified on cross-examination, however, that Employer informed him that his cashier job remained available but that he told Employer that he was never returning to that job.

Employer testified that, on or about October 12, 1993, he told Claimant that his job at the convenience store was still available, but that Claimant never returned to work. Employer stated that even as of the date of the hearing, April 4, 1994, Claimant's job remained available. Also, Employer presented the medical report of Dr. Chris Kahlenborn, dated March 25, 1994, who had examined Claimant at the request of Claimant's and Employer's counsel. Dr. Kahlenborn opined that Claimant was doing well and that the injury did not preclude him from doing any activity whatsoever.

Considering the above, the WCJ determined that Claimant was totally disabled from the gunshot wound for the closed period from September 22, 1993, to October 12, 1993, and granted Claimant benefits of $154 per week for that period of time. However, the WCJ found that Claimant refused available work within his abilities when Claimant failed to return to his job with Employer, and, accordingly, suspended Claimant's benefits, effective October 13, 1993. Based on Dr. Kahlenborn's opinion, the WCJ further found that Claimant's disability terminated on March 25, 1994.

Claimant appealed the WCJ's order to the Board, asserting that fear of returning to his employment, caused by the work-related robbery incident and gunshot wound, constituted good cause for his failure to return to his job with Employer. The Board, however, affirmed the WCJ and concluded that Claimant did not sustain his burden of proving a mental injury within the standard articulated by our Supreme Court in *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990). The Board indicated that Claimant had to demonstrate that he was subjected to abnormal working conditions, and had to establish, through expert medical testimony, the connection between those abnormal conditions and his injury. Because Claimant presented only his own lay testimony in support of his petition, the Board determined that Claimant did not sustain his burden of proving a mental injury. This appeal followed.

On appeal, Claimant contends that (1) the WCJ's decision to suspend claimant's benefits was not supported by substantial evidence, and (2) the suspension was improper because Claimant's fear of being shot was a proper reaction to an abnormal working condition and justified his refusal to return to work. Claimant states in his brief that he stipulated to a closed period of disability (Claimant's Brief at 11), and asks this Court for the following relief:

[C]laimant asks [the] Commonwealth Court to reverse the Board and grant him no more than 52 weeks of compensation benefits or no less than benefits from September 21, 1993 through March 25, 1994, or to remand this case with instructions to

enter an award for [C]laimant for a specified period of disability.

(Claimant's Brief at 12.)

The law is clear that a claimant's benefits may be suspended when the WCJ finds that the claimant's earning power is no longer affected by his or her disability. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990). Benefits are generally suspended where an employer offers replacement employment or is able to secure other employment that provides the claimant with income equal to or greater than his or her preinjury job. *Id.*

In this case, the WCJ found that Claimant was offered work within his physical and vocational abilities by Employer and that Claimant refused to accept that position without any good faith reason and, accordingly, the WCJ suspended Claimant's benefits. Claimant, however, argues that the suspension was erroneous, because his fear of returning to work, and possibly being shot a second time, constitutes a psychological injury that precludes him from returning to his former employment.

■ Where a claimant asserts that he sustained a mental injury **caused by a mental stimulus,** the claimant must prove either "(a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (b) that abnormal working conditions over a longer period of time caused the injury." *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Commission),* 141 Pa.Cmwlth. 317, 595 A.2d 729, 732 (1991). **But, in a case where a physical stimulus causes a mental injury,** the heightened burden of proof explained in *Martin* is inapplicable. Instead, a claimant alleging a mental injury from a physical stimulus need only demonstrate that the physical stimulus caused the injury. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.),* 168 Pa.Cmwlth. 488, 650 A.2d 1202 (1994), *petition for allowance of appeal denied,* 544 Pa. 650, 664 A.2d 978 (1995). In other words, a claimant's burden in a physical-mental case is exactly the same as the burden generally used to determine workers' compensation eligibility:

that the injury arose in the scope of employment and is related thereto. *Bell v. Workmen's Compensation Appeal Board (Allegheny County Housing Authority),* 152 Pa. Cmwlth. 636, 620 A.2d 589 (1993).

■ Claimant argues that the physical-mental standard should be applied in this matter and that the Board applied the wrong criterion. We agree.

It is clear from the record that Claimant experienced a work-related **physical injury** (the gunshot wound) which Claimant alleges caused him to sustain a mental injury (his extreme fear of returning to that job). The Claimant testified that his fear of returning to work was connected to the shooting. Therefore, the Board erred in analyzing this case under the *Martin* abnormal working condition test, and, instead, should have applied the test in *Whiteside* and *Bell.*

■ Further, Claimant's failure to present medical testimony in support of his petition was not necessarily fatal to his claim. While unequivocal medical testimony is generally required in mental injury cases, *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin),* 102 Pa.Cmwlth. 528, 518 A.2d 1316 (1986), we believe that a fact finder could determine that Claimant's fear was obviously caused by his gunshot wound. A claimant need not necessarily present expert testimony on the issue of causation, when an injury immediately manifests itself in the course of employment, *Morgan v. Giant Markets, Inc.,,* 483 Pa. 421, 397 A.2d 415 (1979), or the injury is a natural or probable result of an event, *Hilton Hotel,* although, of course, he may. For causation to be obvious, the nexus must be so clear that an untrained lay person could connect the disability to the injury. *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.),* 141 Pa.Cmwlth. 438, 595 A.2d 781, *petition for allowance of appeal denied,* 529 Pa. 628, 600 A.2d 543 (1991).

The facts in this unique case, where a robber placed the Claimant in fear of his life and used deadly force upon him, may be sufficient to show that Claimant's fear of returning to work was either a direct and

immediate result of the shooting or a natural and probable development from that attack. We believe that an untrained lay person would have no problem in finding a nexus between the violence inflicted on Claimant and his fear of returning to the very employment where the attack occurred. Therefore, even in the absence of expert medical testimony explaining the causal connection between the shooting and Claimant's fear, a WCJ could reasonably conclude that Claimant sustained a mental injury as an immediate or natural and probable result of his gunshot wound.

Accordingly, the Board's order is vacated and we remand this matter to the Board to determine, using the existing record,[2] whether Claimant sustained a mental injury *caused by a physical stimulus* under the test explained in *Whiteside* and *Bell.*

Further, if the Board finds that Claimant sustained a mental injury that prevents him from returning to his preinjury job, Employer is not entitled to a suspension of Claimant's benefits. *Pieper; cf. Textron, Inc.-Townsend Co. v. Workmen's Compensation Appeal Board (Morack),* 105 Pa.Cmwlth. 273, 523 A.2d 1216 (1987) (claimant was entitled to reinstatement of benefits due to a psychiatric injury caused by the fear of returning to his job, when claimant had previously sustained a series of work-related physical injuries). The Claimant, however, is limited to no more than 52 weeks of benefits, the maximum amount sought by Claimant in this appeal.

### ORDER

**NOW,** August 20, 1997, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby vacated and this case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**2.** We note that the WCJ erred in relying on the medical opinion of Dr. Kahlenborn in this matter. While Dr. Kahlenborn's opinion letter is part of the certified record, our review of the transcript reveals that it was never offered into evidence. The transcript of the April 4, 1994 hearing identifies the document (Notes of Testimony, 4/4/94, at 45; Reproduced Record at 45a), but nowhere in that transcript is the document entered into evidence.

The WCJ relied on Dr. Kahlenborn's letter in concluding that Claimant's benefits should be terminated, a decision not challenged by Claimant in this appeal. However, since Dr. Kahlenborn's letter is not part of the record, that document may not be considered on remand to find whether Claimant sustained a mental injury.