**James A. GULICK, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PEPSI COLA OPERATING COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 6, 1998.
Decided April 23, 1998.

Richard A. Estacio, Harrisburg, for petitioner.

Michael W. Babic, Lancaster, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

James A. Gulick (Claimant) appeals an order of the Workers' Compensation Appeal Board, which affirmed an order of a Workers' Compensation Judge (WCJ) terminating his benefits.

Claimant was employed by the Pepsi Cola Operating Company (Employer) as a bulk delivery driver, and on May 23, 1990, he sustained a work-related injury to his lower back. Employer issued a notice of compensation payable, which described Claimant's back injury as a "lumbar strain," and Claimant began to receive benefits in the amount of $264 per week.

On August 6, 1992, Employer filed a termination petition stating that, as of June 23, 1992, Claimant had fully recovered from his work-related injury and was capable of returning to work without restriction.

Before the WCJ, Claimant testified that he was no longer receiving any treatment for his lower back injury. However, he further testified that, for approximately three weeks in September of 1992, he was hospitalized as a result of the anxiety of fearing that his benefits were going to be terminated. Further, Claimant confirmed that he had suffered from psychiatric problems since 1982, long before he sustained his back injury in May of 1990.

Claimant presented the expert testimony of Dr. Gregory B. Sullivan, a psychiatrist, who testified that Claimant suffered from schizophrenia. He traced the history of Claimant's illness back to 1982, when Claimant first sought treatment for his condition. Although Dr. Sullivan testified that Claimant's employment did not cause the schizophrenia, he opined that Claimant's pre-existing mental disorder was significantly worsened by (1) the work-related injury and (2) the "instability and uncertainty brought on by the question of denying him benefits [via the termination action] and health insurance." (Deposition of Dr. Sullivan at 16;

Reproduced Record (R.R.) at 177.) Dr. Sullivan also indicated that Claimant had received no treatment for his disorder from 1984 until late 1990, after Claimant injured his back.

Employer introduced the medical testimony of Dr. Abram M. Hostetter, a board certified expert in psychiatry. Dr. Hostetter determined that Claimant suffered from schizophrenia but concluded that it was not caused by or related to Claimant's 1990 back injury. He opined that there was no connection between Claimant's schizophrenia and the possible termination of his benefits.

Regarding Claimant's back injury, Dr. Lance O. Yarus, an expert in orthopedic surgery, performed an independent medical examination of the Claimant. Dr. Yarus confirmed that Claimant had suffered a work-related lumbar strain but opined that Claimant had fully recovered from that injury and that he would place no restrictions upon Claimant's return to work. Dr. Yarus made no findings as to Claimant's mental state at the time of the examination.

After the hearings, the WCJ issued a decision terminating Claimant's benefits. The WCJ accepted the testimony of Drs. Yarus and Hostetter and found as fact that Claimant had fully recovered from his back injury and that Claimant's schizophrenia was neither caused nor aggravated by the work-related injury. In addition, the WCJ concluded that the possibility of the termination of Claimant's workers' compensation benefits was a normal working condition and that Claimant's response to Employer's termination petition was a subjective reaction to a normal working condition.

Claimant appealed to the Board, arguing, among other things, that the WCJ erred in applying the higher burden of proof for mental injuries caused by a mental stimulus, referred to as the "mental-mental" standard, rather than the burden for mental injuries caused by a physical injury. The Board rejected Claimant's argument and held that there was sufficient evidence in the record to support the application of the mental-mental standard and that Claimant failed to establish that he suffered a mental injury. This appeal followed.

On appeal, Claimant contends that the Board erred in affirming the WCJ's decision to terminate his benefits, because (1) the physical-mental standard applies in this case, and (2) Employer did not sustain its burden of proof to terminate Claimant's benefits since its expert agreed that Claimant's mental problems were related to his physical injury. Claimant does not dispute the WCJ's determination that Claimant fully recovered physically from his work-related back injury and was able to return to his pre-injury job without any physical restriction.

■ Where a claimant alleges that he or she sustained a mental injury caused by a mental stimulus, the claimant must prove either "(a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (b) that abnormal working conditions over a longer period of time caused the injury." *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 141 Pa. Cmwlth. 317, 595 A.2d 729, 732 (1991). It must be established that the mental injury was aggravated by actual employment events, because a subjective reaction to normal working conditions will not support a finding that a claimant sustained a compensable injury. *Id.* The requirement that a claimant prove the existence of abnormal working conditions is

> intended to distinguish between psychiatric injuries that are compensable because the necessary causal relationship between the employment and mental disability has been established from those psychiatric injuries that arise from the employee's subjective reactions to normal working conditions. The phraseology 'abnormal working conditions' has developed into a shorthand expression for that critical distinction....

*Martin v. Ketchum, Inc.*, 523 Pa. 509, 518–19, 568 A.2d 159, 164 (1990). The question of whether a claimant has been exposed to abnormal working conditions is a mixed question of law and fact and is reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa. Cmwlth. 308, 595 A.2d 725 (1991), *petition for*

*allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992).

■ However, in a case where a physical stimulus is alleged to have caused a mental injury, the heightened burden of proof explained in *Blecker* and *Martin* is inapplicable. A claimant alleging a mental injury from a physical stimulus need only demonstrate that the physical stimulus caused the injury. *Vactor v. Workers' Compensation Appeal Board (Glenn's Dairy, Inc.),* 699 A.2d 834 (Pa.Cmwlth.1997). Thus, "a claimant's burden in a physical-mental case is exactly the same as the burden generally utilized to determine workers' compensation eligibility: that the injury arose in the scope of employment and is related thereto." *Id.* at 837.

■ Because the relationship between an alleged psychiatric injury and a claimant's employment is generally not obvious, a claimant must present unequivocal expert medical testimony to establish the causal connection. *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation),* 81 Pa.Cmwlth. 579, 474 A.2d 82 (1984); *cf. Vactor* (in a physical-mental case, a WCJ could conclude that a claimant's mental injury, in the form of extreme fear of returning to work, was obviously caused by a robber shooting the claimant in the course of his employment, because any person could find a nexus between the violence and claimant's fear, thus, expert testimony was not necessarily required).

In the present case, Claimant contends that the physical-mental standard applies here, because "[a]ll of the evidence submitted in this matter ... reveals that [Claimant's] work injury aggravated his pre-existing schizophrenia...." (Claimant's Brief at 4.) We disagree.

Dr. Hostetter, whose testimony was accepted as credible by the WCJ, opined that Claimant's schizophrenia was *not* caused by or related to his back injury.[1] Although Claimant's expert, Dr. Sullivan, connected the aggravation of Claimant's schizophrenia to, among other things, his back injury, the WCJ rejected Dr. Sullivan's opinion.

In addition, when Claimant was asked by his attorney to explain why he was hospitalized in 1992 for his schizophrenia, Claimant stated that it was caused by the "anxiety of knowing that my benefits were going to be terminated." (Notes of Testimony (N.T.), 10/19/92, at 16; R.R. at 14.) Claimant did not relate the worsening of his mental illness to his physical injury.

■ The testimony of Dr. Hostetter and of Claimant, contrary to Claimant's argument, indicate that the Claimant's mental illness was not caused or aggravated by Claimant's physical injury. Therefore, we hold that the physical-mental standard is not applicable in this matter.

Moreover, regarding Claimant's allegation that his schizophrenia was aggravated by the Employer's termination petition, in *Ryan v. Workman's Compensation Appeal Board*

---

1. Claimant contends that Dr. Hostetter's opinion supports the view that Claimant's back injury instigated his psychological disability. Claimant points to the following testimony provided on cross-examination:

   Q. [W]ould you agree that in this case that the psychosocial stressor of Mr. Gulick losing his job, having a back injury at work, losing his job and having the possible termination of worker[s'] compensation benefits, were those stressors that caused him to decompensate [which means a deterioration in the functioning of a person with a mental disorder]?
   A. You could say that all of those things were associated. And as I said previously, *I would not swear that's what caused it because I know the mental life of these people and other things can trigger it off too....*
   (Hostetter Deposition at 63–64; R.R. at 149–50.) (Emphasis added.)

   In our view, Dr. Hostetter's statement that Claimant's work injury was "associated" with the worsening of the schizophrenia is not the equivalent of opining that the back injury **caused** that decline in Claimant's mental state. Dr. Hostetter expressly stated that he unable to say what caused Claimant's schizophrenia to become worse, because there are many factors that could cause the illness to become more acute.

   Claimant argues that Dr. Hostetter's opinion was equivocal because he opined that Claimant was unable to work because of his psychological condition. However, Dr. Hostetter did not believe that Claimant's schizophrenia was caused by or related to his employment; hence, Dr. Hostetter's testimony that Claimant was unable to work does not undermine his medical opinion.

*(Community Health Services),* —— Pa. ——, 707 A.2d 1130 (1998), our Supreme Court recently determined that a mental injury, arising from facts similar to those in this case, had to be analyzed under the mental-mental standard. In *Ryan,* a workers' compensation claimant, who received physical injuries in a work-related automobile accident, allegedly suffered a psychological injury when she was sued by the driver of the other vehicle. Reversing this Court's holding that the claimant's mental injury was caused by a physical stimulus, the Supreme Court reasoned as follows:

> ... In this case the byproduct, or the triggering event, of Claimant's psychological injury, was the lawsuit, not the accident itself. The accident itself was only indirectly causally related to Claimant's psychological injury since, without the accident, there would not have been the lawsuit to trigger or stimulate the psychological injury....
>
> Therefore, ... the evidence demonstrates that Claimant's psychological injury was triggered by the other driver's lawsuit.... We decline to find that learning of the filing of a lawsuit is a physical stimulus which could be the basis of a mental injury. Instead, we believe that, as a matter of law, the facts demonstrate that it was the psychological stimulus of learning that she was being sued as a result of the work-related accident, rather than the physical stimulus in the form of the injuries Claimant suffered from the work-related accident, which caused Claimant's psychological injury. Thus, *Claimant's injury should have been classified as a mental/mental injury for purposes of determining ... [whether] she could receive a reinstatement of workers' compensation benefits.*

*Ryan,* —— Pa. at ——, 707 A.2d at 1135 (emphasis added).

■ Thus, following *Ryan,* we conclude that the WCJ and the Board properly determined that the aggravation of Claimant's schizophrenia by Employer's termination petition, (the fear of losing his compensation benefits) had to be proven under the mental-mental standard.

■ As we previously noted, to prove a compensable injury under the mental-mental standard, it must be shown (a) that actual extraordinary events occurred at work which caused the Claimant's mental trauma, or (b) that abnormal working conditions over a longer period of time caused the mental injury. In our view, the Employer's decision to file a petition to terminate Claimant's benefits was neither extraordinary nor abnormal.

With certain exceptions, employees in Pennsylvania are protected by the Act and are covered by workers' compensation insurance. Every employee under the Act has the potential to be injured on the job and to become a workers' compensation claimant. Since the continuation of workers' compensation payments is not necessarily intended to be eternal and immutable, every claimant receiving such benefits is likely to be subjected to a future termination, suspension, or modification of his or her benefits. And, no employer could be expected to refrain from filing a petition to terminate when a claimant's injury is healed and earning power restored. Accordingly, Employer's decision to seek to terminate Claimant's benefits, far from being an extraordinary or abnormal event, is an experience that is commonly shared by workers' compensation claimants.

In *Ryan,* our Supreme Court stated that, where the evidence showed that a claimant's mental illness was caused by a subjective concern over a lawsuit filed by a third party to the claimant's work-related vehicle accident, the lawsuit was not an abnormal working condition. Similarly, the evidence in this case shows that Claimant had a subjective reaction, due to his pre-existing schizophrenia, to Employer's termination petition, and, thus, the Employer's initiation of litigation to terminate Claimant's benefits is likewise not an abnormal working condition.

Therefore, even if the evidence showed that Claimant's mental condition was exacerbated by Employer's filing of the termination petition, that fact would be insufficient to demonstrate an injury under the mental-

mental standard.[2]

Accordingly, the Board's order is affirmed.

### ORDER

**NOW,** April 23, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

**2.** We note that Claimant's alleged mental injury here is similar to a type of mental injury which Professor Arthur Larson has dubbed "compensation neurosis." According to Professor Larson, compensation neurosis is caused by an "unconscious desire to obtain or prolong compensation, or ... the sheer anxiety over the outcome of compensation litigation—in either case producing a genuine neurosis disabling the claimant." 3 *Larson's Workers' Compensation Law* § 42.24.

In Professor Larson's view, compensation neurosis is a genuine condition, qualifying the claimant for continued benefits. *Larson* §§ 42.24(a), 24(b).

While we do not decide whether such claims are generally compensable in Pennsylvania, we note that, if such a claim is cognizable at all, the claimant would need to prove a compensation neurosis injury under the mental-mental standard. *Ryan.*