728 A.2d 938

**CITY OF PHILADELPHIA**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (BRASTEN),**

**Appeal of Anthony Brasten.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1997.

Decided May 3, 1999.

Reargument Denied June 29, 1999.

John B. Alessandroni, Philadelphia, for Anthony Brasten, appellant.

Shawn M. Dethlefsen, Allentown, Mary T. Uhlig, Nancy J. Pease, Kenneth F. DeMarco, Philadelphia, for City of Philadelphia, appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### ORDER

PER CURIAM.

The Court being evenly divided, the order of the Commonwealth Court is hereby affirmed.

Justice ZAPPALA files an opinion in Support or Affirmance in which Chief Justice FLAHERTY and Justice CAPPY join.

Justice NIGRO files an Opinion in Support of Reversal in which Justices CASTILLE and NEWMAN join.

### OPINION IN SUPPORT OF AFFIRMANCE

ZAPPALA, Justice.

■ The issue before this Court is whether a criminal indictment and prosecution constitute abnormal working conditions for the purpose of determining whether workers' compensation benefits should be granted to an employee suffering from what we have termed a psychic injury. For the following reasons, I would hold that abnormal working conditions are not present in this case, and would therefore affirm the holding of the Commonwealth Court.

■ Appellate review of a workers' compensation proceeding is limited in scope to a determination of whether constitutional rights have been violated, whether an error of law has been committed, or whether the findings of fact are supported by substantial evidence. See *Wilson v. W.C.A.B. (ALCOA),* 542 Pa. 614, 669 A.2d 338 (1996).

■ In order to recover workers' compensation benefits for a psychic injury, the claimant must prove by objective evidence that he has suffered a psychic injury and that such injury is other than a subjective reaction to normal working conditions. See *id.;* see also *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990).

On June 26, 1992, Appellant, a City of Philadelphia Police Sergeant, was involved in an on the job incident. During the

incident, Appellant shot and killed an individual who had barricaded himself inside a building. As a result of this incident, Appellant suffered sprains and strains of the neck. These physical injuries were compensated for through workers' compensation, and are not at issue here.

After the incident, Appellant became the target of a criminal investigation by the Philadelphia Police Department and the District Attorney's office. These investigations resulted in Appellant being indicted for voluntary manslaughter, involuntary manslaughter, and reckless endangerment of another person. The charges were dismissed at a preliminary hearing, only to be refiled. Appellant was eventually tried and acquitted of involuntary manslaughter. Additionally, his case attracted a great deal of media scrutiny and was the subject of public demonstrations.

Appellant filed a "Petition to Review Compensation Benefits," requesting compensation for psychic injuries as well as the physical injuries suffered during the June 26, 1992, incident.

During the hearing before the Workers' Compensation Judge, Appellant presented the testimony of Dr. Elizabeth DelPezzo, a licensed psychologist. Dr. DelPezzo indicated that Appellant suffered from post-traumatic stress disorder. It is this injury which forms the basis of Appellant's claim here in question.

Dr. DelPezzo opined that the post-traumatic stress disorder was not caused by Appellant's job activities before or during the shooting. Rather, she opined that the disorder was an objective reaction to the events subsequent to the shooting.

Two police officers, John McGinnis and John McCorriston, testified that the events of June 26, 1992 were normal working conditions for a Philadelphia police sergeant. These officers also testified that the indictment and prosecution were not a normal part of a police officer's job. This testimony led the WCJ to conclude that the shooting incident of June 26, 1992 was a normal working condition but that the subsequent indictments of Appellant were abnormal working conditions.

I conclude that a grand jury investigation, an indictment, and a trial, as well as all of the media attention associated with a high profile case such as this one, do not constitute abnormal working conditions.

The rationale for requiring a showing of abnormal working conditions is to establish the causal connection between a psychic injury and the employment. The focus must be on the stimulus underlying the claimant's reaction.

In the present case, the investigation and trial were the stimulus for Appellant's injury. This was the testimony of Appellant's own medical expert and the finding of fact by the WCJ. Being indicted in a homicide case is certainly traumatic, but I would hold that even if the events occurring after the shooting were abnormal, they were, at best, tangentially related to Appellant's employment.

In this respect, this case is analogous to *Ryan v. WCAB (Community Health Services)*, 550 Pa. 550, 707 A.2d 1130 (1998). *Ryan* involved a visiting nurse who was involved in an automobile accident while on the job. She was compensated for her physical injuries, but since her psychological injuries arose from learning that the other driver in the accident was suing her, her psychological injuries were not considered to be job related. There, this Court stated:

> [i]n this case the byproduct, or the triggering event, of Claimant's psychological injury, was the lawsuit, not the accident itself. The accident itself was only indirectly causally related to Claimant's psychological injury since, without the accident, there would not have been the lawsuit to trigger or stimulate the psychological injury.

550 Pa. at 560, 707 A.2d at 1135. This Court held that,

> Claimant first fails in proving that the psychological injury arose in the course of her employment. Here, the evidence shows that Claimant's psychological injury was triggered by the psychological stimulus of learning that she was being sued by the other driver involved in her work-related accident and not by the automobile accident itself. The automobile accident and the physical injuries suffered by Claimant

have nothing more than a tangential or indirect relationship to causing Claimant's psychological injury, since it was the other driver's injuries from the automobile accident which formed the basis of the other driver's lawsuit.

*Id.* at 561–562, 707 A.2d at 1136.

In the present case, I believe that neither the negative publicity nor the arrest and trial were working conditions. Furthermore, I would find that the criminal litigation here, as with the civil litigation in *Ryan*, is only tangentially related to Appellant's employment. Therefore, I would affirm the order of the Commonwealth Court.

Chief Justice FLAHERTY and Justice CAPPY join this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIGRO, Justice.

This case presents the question of whether a police officer's indictment and prosecution following the shooting death of a suspect in the line of duty constitutes abnormal working conditions. For the following reasons I find that Appellant was exposed to abnormal working conditions and would thus reverse the order of the Commonwealth Court.

The WCJ found that the June 1992 gun battle was Appellant's most dangerous encounter in his twenty-year tenure on the police force. Following the stress of the ordeal itself, Appellant was further beleaguered by news that the suspect's weapon was not loaded. Initially neighbors of the deceased heaped praise on Appellant and he was further assured that he would be officially commended by the Department for his actions. However, he soon became the target of public demonstrations calling for his suspension or termination. The Department investigations culminated in Appellant's criminal indictment for voluntary manslaughter, involuntary manslaughter and recklessly endangering another person. While those charges were dismissed at a preliminary hearing, Appellant was re-arrested on the same charges. Again, the reckless endangerment and voluntary manslaughter charges were dis-

missed at a preliminary hearing and, following a bench trial, Appellant was found not guilty on the involuntary manslaughter charge.

The WCJ further found that the shooting incident and the Department investigation were normal working conditions but the indictments and prosecution were not a normal part of an officer's job. Based upon the uncontradicted medical testimony that Appellant suffered from post-traumatic stress disorder as a result of the charges and publicity, the WCJ granted Appellant's petition, the Workers' Compensation Appeal Board affirmed, but the Commonwealth Court reversed.

Where a claimant alleges that he or she sustained a mental injury caused by a mental stimulus, the claimant must prove either "(a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time or (b) that abnormal working conditions over a longer period of time caused the injury." *Gulick v. Workers' Compensation Appeal Board (Pepsi Cola Operating Co.)*, 711 A.2d 585, 587 (Pa.Commw.1998) (citing *Blecker v. Workmen's Compensation Appeal Board (Pennsylvania Human Relations Comm'n)*, 141 Pa. Commw. 317, 322, 595 A.2d 729, 732 (1991)).

Moreover, in establishing a mental/mental claim, work-related stress must be caused by actual objective abnormal working conditions, as opposed to subjective, perceived or imagined employment events. *P.R. Hoffman Materials v. Workers' Compensation Appeal Board (Zeigler)*, 707 A.2d 1184, 1185 (Pa.Commw.1998) (citing *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990)). The question of whether a claimant has been exposed to abnormal working conditions is a mixed question of law and fact and is reviewable on appeal. *Gulick*, 711 A.2d at 587 (citing *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa. Commw. 308, 595 A.2d 725 (1991), *appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992)).

It is not disputed that the work of a police officer as a crime fighter is, by definition, a high stress and dangerous one. However,

[f]or a high stress working environment to constitute a legally sufficient abnormal working condition, there must be a finding either that claimant's work performance (as distinguished from the mere job description) was unusually stressful for that kind of job *or a finding that an unusual event occurred making the job more stressful than it had been.*

*City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852, 856 (1990) (emphasis added).

Thus, the fact that the encounter of June 1992 was the most perilous position Appellant had ever been placed in over the course of his twenty years on the force merely makes the experience subjectively abnormal for the Appellant, but does not rise to the level of "abnormal working conditions." Similarly, the fact that, following the killing of the suspect, Appellant learned that he had shot someone who was technically unarmed, compounding the stress, is also a subjective reaction to quite foreseeable circumstances of the job. Nonetheless, the events following the shootout which unfolded over the course of a year are of a substantially different character.

Appellant's expert, Dr. Elizabeth DelPezzo, PhD, a licensed psychologist, was the only medical witness to testify at the hearing. She was unequivocal in stating that Appellant's mental injuries arose from the extraordinary events that plagued him following the incident, and not from the shooting incident itself or even from the investigation. Further, she opined that Appellant's post-traumatic stress disorder was an objective reaction to the protracted events plaguing Appellant for almost a year following the gunfight. Police department witnesses on both sides testified that, while an investigation under the circumstances is a foreseeable and standard consequence, subsequent indictment and prosecution of the investigated officer is not. Captain Lutz testified for Appellant that the subsequent charges were "extremely abnormal." N.T. at 103a–04a. Captain McGinnis, testifying for the City, similarly stated that indictment and prosecution are not a normal part of a police officer's job. Furthermore, this particular indict-

ment consistently made headline news in all area media until its dismissal, at which point Appellant was re-indicted, re-prosecuted and again the focus of a barrage of adverse media attention.

A police officer is accountable for his actions in the line of duty and his actions are properly the subject of a formal investigation. However, the uncontradicted testimony of police officers testifying for Appellant and the City that the two separate indictments and the prosecution amount to abnormal working conditions satisfies the burden requirements as set forth in *Gulick.* Specifically, "actual extraordinary events which can be pinpointed in time" are clearly demonstrated by the indictments and prosecution, and "abnormal working conditions" are demonstrated through indictment, dismissal, re-indictment and ongoing adverse media coverage, over a longer period of time. *Gulick*, 711 A.2d at 587. Furthermore, I cannot subscribe to the assertion that the foregoing events are merely "tangentially" related to Appellant's employment as, but for his employment as a police officer and his participation in the "normal" events of June 1992, he would not have been a defendant in the subsequent indictments nor the object of media attention. In addition, his potential future employment as a police officer was inextricably entwined with the outcome of those year-long events.

The Commonwealth Court erred in declining to find abnormal working conditions based on the determination that indictments and public outcry are not "outside the realm of possibility." This is an incorrect statement of the standard for finding abnormal working conditions as articulated in *Blecker* and *Hart* and recently reiterated in *Gulick.* The measure of working conditions is whether they are "abnormal," not whether they are within the "realm of possibility" for that job. Appellant has met his burden of showing, by substantial evidence, that abnormal working conditions gave rise to his mental disability and that he thereby qualifies for compensation under the mental/mental paradigm.

Accordingly, I would reverse the order of the Commonwealth Court.

Justice CASTILLE and Justice NEWMAN join this Opinion in Support of Reversal.