IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruthann Pruzinsky,                          :
                    Petitioner              :
                                            :   No. 849 C.D. 2015
            v.                              :
                                            :   Submitted: November 13, 2015
Workers' Compensation Appeal                :
Board (Mercy Catholic Medical               :
Center of Southeastern Pennsylvania),       :
                    Respondent              :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  March 9, 2016


        Ruthann Pruzinsky (Claimant) petitions for review of the May 5, 2015 decision of the Workers' Compensation Appeal Board (Board), affirming the order of a workers' compensation judge (WCJ) that denied and dismissed her claim and penalty petitions.

        Mercy Catholic Medical Center of Southeastern Pennsylvania (Employer) employed Claimant as an insurance verifier.  Claimant worked outside of Employer's hospital, in a building a few miles from the main hospital building.  In the summer of 2011, the building in which Claimant worked became infested with

_____

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

springtail bugs, which are tiny bugs that are barely visible, multiply rapidly, and are difficult to get rid of. The bugs also infested Claimant's car and home. Claimant sought medical treatment and informed Employer on August 23, 2011, that she could not continue working because of the bugs. Employer waited nearly one year, until August 22, 2012, to issue a notice of workers' compensation denial (NCD). (WCJ's Findings of Fact Nos. 1, 4.)

On August 6, 2013, Claimant filed a claim petition alleging that she sustained an injury in the nature of post-traumatic stress disorder (PTSD) caused by the insect infestation at her workplace. Claimant sought total disability benefits as of September 1, 2011 and ongoing, medical benefits, and counsel fees. Employer filed an answer denying the allegations of this petition. On September 9, 2013, Claimant filed a penalty petition alleging that Employer violated the Pennsylvania Workers' Compensation Act (Act)[2] by failing to accept or deny her claim within the required statutory period.[3] Claimant sought a 50% penalty on all compensation due and owing from September 1, 2011, to August 21, 2013. (WCJ's Findings of Fact Nos. 2-3.)

The petitions were assigned to the WCJ for hearings. Claimant testified that she developed a rash on her skin as a result of contact with the bugs. She stated that she visited a dermatologist and received a medicated cream, which eliminated the rash in a couple of weeks. However, by this time, Claimant noted that the bugs had infested her car and home. As a result, Claimant indicated that she constantly cleaned her home, bagged and/or threw out her clothing, threw out her furniture, beds, and

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501- 2708.

[3] Section 406.1 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1, provides that a claim must be accepted or denied within 21 days of notice of a disability.

carpets, and bagged all of her food and paper products. (Reproduced Record (R.R.) at 14a-15a.)[4]

Claimant testified that she could not stop thinking or dreaming about the bugs, and that she often had nightmares and could not sleep. Claimant noted that her family hired an exterminator to treat her house and cars, but she still constantly looked for bugs. Claimant stated that she eventually sought treatment from a psychiatrist, Dr. Deborah Blumenthal, and received medications from another doctor to calm her down and help her sleep. She also stated that several representatives of Employer were aware of her bug infestation problem and that Employer had in fact reimbursed her $5,000.00 for her out-of-pocket expenses, but noted that this only accounted for a portion of her overall expenses related to the bugs. (R.R. at 16a-22a.)

Claimant testified that she informed Employer in late August 2011 that she could not return to work, after which she received unemployment compensation benefits for a period of one year. Claimant noted that, as of September 30, 2013, the date of the WCJ's hearing, she had returned to part-time employment with a temp agency. However, Claimant stated that even though the bugs are now gone and she is off the medication, she still suffers from symptoms related to the infestation, including constantly dreaming about the bugs, vacuuming her house, and wiping things down, being unable to sleep, and being embarrassed that she could not continue working for Employer. (R.R. at 23a-29a.)

---

[4] We note that Claimant's reproduced record identifies the page number with a lowercase "r" followed by the Arabic figure, which does not comport with Rule 2173 of the Pennsylvania Rules of Appellate Procedure, requiring pagination to include the Arabic number followed by lowercase "a." We will identify the relevant pages in accordance with the proper format set forth in Pa.R.A.P. 2173.

On cross-examination, Claimant acknowledged that in her testimony before the referee in her unemployment compensation case, she stated that she notified Employer on September 1, 2011, that an exterminator had eliminated the bugs and she was able to return to work. Claimant also admitted that her rash disappeared after a couple of weeks of using the cream from the dermatologist. Claimant denied informing Dr. Blumenthal during her first visit in May 2012 that the bugs were gone by September 2011. Claimant agreed that, as of the date of the hearing, she was feeling better, actively searching for work, and no longer mentally disabled from returning to work. On re-direct examination, Claimant testified that she had only been off her medications for a few months and that she previously felt that she needed the medication to get through the day. (R.R. at 30a-36a.)

Claimant also presented the deposition testimony of Dr. Blumenthal, a clinical psychologist who specializes in psychological trauma and anxiety disorders and who first saw Claimant in May 2012. Dr. Blumenthal testified that Claimant presented with a history of bug infestation resulting from exposure at her place of employment, which caused her to become more and more upset and distressed over time. Dr. Blumenthal stated that Claimant was nervous during sessions, often sitting on the edge of her chair because she was worried about spreading the bugs to Dr. Blumenthal's office. Dr. Blumenthal noted that Claimant was constantly obsessing about the bugs, cleaning, vacuuming, or otherwise working to eliminate them. By May of 2012, Dr. Blumenthal said that the bugs were probably eradicated but that Claimant still felt that they were jumping on her. (R.R. at 48a-56a.)

Dr. Blumenthal testified that Claimant felt physically and socially isolated, which contributed to her diagnosis of depression. Dr. Blumenthal also diagnosed Claimant as suffering from obsessive-compulsive disorder (OCD). Dr.

4

Blumenthal stated that she saw Claimant approximately thirty times from May 2012 through March 2013 and that her treatment consisted of general stress reduction, i.e., providing Claimant with a safe place to process her feelings and discuss them; breathing and/or visual techniques to reduce her stress levels; and OCD techniques, such as psychoeducation, which helped Claimant understand how anxiety works and how rituals may increase anxiety, and exposure with response prevention, which assisted Claimant with recognizing and veering away from her ritualistic behaviors. However, by March 2013, Dr. Blumenthal noted that Claimant's condition had improved. (R.R. at 57a-69a.)

When questioned whether Claimant was capable of holding a job in 2012, Dr. Blumenthal opined that she was not sure but suspected she could. Nevertheless, Dr. Blumenthal opined that it would have been very difficult for Claimant to return to her previous place of employment because of the bug infestation. Dr. Blumenthal explained that Claimant still had a fear of being re-infested and that fear would have intensified had she returned to her prior work site, to the extent that her symptoms would have recurred. (R.R. at 69a-71a.)

On cross-examination, Dr. Blumenthal reiterated her assessment that Claimant was in need of treatment as of May 2012 when she first saw Claimant. However, Dr. Blumenthal acknowledged that Claimant was looking for work at that time. When questioned whether there was any time from May 2012 through March 2013 that Claimant was incapable of working, Dr. Blumenthal responded that she believed that Claimant would benefit from continued counseling while returning to work, and that Claimant could work, even full time. Dr. Blumenthal later qualified her response by stating that she was not sure if Claimant could have worked during that time period and that returning to work could have exacerbated her already severe

5

symptoms. Dr. Blumenthal also acknowledged that she did not review any of Claimant's prior medical records or Claimant's deposition testimony. She agreed that Claimant's medical records from March 2006 reflect that Claimant was suffering from depression, anxiety, and decreased sleep at that time, but that Claimant never reported any prior experience with these conditions. On re-direct examination, Dr. Blumenthal testified that the medical records from 2006 do not alter her opinions in this matter. (R.R. at 74a-88a.)

Employer rested without presenting any evidence in rebuttal. By decision dated April 29, 2014, the WCJ denied and dismissed Claimant's claim and penalty petitions. The WCJ accepted the testimony of Claimant as credible, but only to the extent that her workplace was infested with springtail bugs which she later carried to her car and home. The WCJ rejected the remainder of her testimony as not credible. The WCJ also rejected the testimony of Dr. Blumenthal as not credible, noting that Dr. Blumenthal was not aware of Claimant's rash or prescribed medication and did not review the medical records from Claimant's treating dermatologist or family physician concerning her alleged skin condition. Additionally, the WCJ noted that Dr. Blumenthal opined that Claimant was capable of full-time employment as of her first visit in May 2012 through her last visit in March 2013.

Based on these credibility determinations, the WCJ concluded that Claimant failed to establish that she suffered any physical injuries in the course and scope of employment, i.e., a physical stimulus, which resulted in a mental injury in the nature of PTSD, depression, or OCD to warrant an award of benefits. Claimant appealed to the Board, but the Board affirmed the WCJ's decision. The Board acknowledged that the WCJ only considered Claimant's claim as a physical/mental

6

claim and did not make any findings and conclusions as to any alleged mental stimulus or abnormal working conditions. However, the Board noted that Claimant could not meet her burden of establishing "any mental injury resulting from any work-related stimulus" because the WCJ rejected her testimony regarding her symptoms, as well as the testimony of Dr. Blumenthal regarding a diagnosis and its cause, as not credible. (Board op. at 7.) The Board also stated that the WCJ sufficiently explained why he was rejecting the uncontradicted testimony of Dr. Blumenthal.

On appeal to this Court,[5] Claimant first argues that the WCJ erred in failing to find that she suffered a compensable physical/mental injury. We disagree.

In a claim petition, the claimant bears the burden of establishing a right to compensation and of proving all necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993); *B & T Trucking v. Workers' Compensation Appeal Board (Paull)*, 815 A.2d 1167, 1170-71 (Pa. Cmwlth. 2003). Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015). As always, the WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight, and is free to accept the testimony of any witness, including medical witnesses, in whole or in part. *Id.* at 400.

---

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

Mental injuries are compensable under the Act and fall into three categories: (1) mental/physical, where a psychological stimulus causes a physical injury; (2) physical/mental, where a physical stimulus causes a mental injury; and (3) mental/mental, where a psychological stimulus causes a mental injury. *Ryan v. Workmen's Compensation Appeal Board (Community Health Services)*, 707 A.2d 1130, 1133-34 (Pa. 1998).

Where, as here, a claimant asserts a claim under the physical/mental standard, the claimant must establish, in relevant part, that the mental injury resulted from a triggering physical stimulus and arose during the course of employment. *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 927 A.2d 743, 746 (Pa. Cmwlth. 2007). In such cases, "[a] claimant need not prove that he or she suffered a physical disability that caused a mental disability for which he or she may receive benefits. Nor must a claimant show that the physical injury continues during the life of the [mental] disability." *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, 1161 (Pa. Cmwlth. 1999) (emphasis omitted).

Rather, we have interpreted the term "physical stimulus" as "a physical injury that requires medical treatment, even if that physical injury is not disabling under the [Act]." *Murphy v. Workers' Compensation Appeal Board (Ace Check Cashing Inc.)*, 110 A.3d 227, 234 (Pa. Cmwlth.), *appeal denied*, 126 A.3d 1286 (Pa. 2015). Additionally, "the mental injury must be related to the physical stimulus." *Id.*; *see also Gulick v. Workers' Compensation Appeal Board (Pepsi Cola Operating Co.)*, 711 A.2d 585, 588 (Pa. Cmwlth. 1998) (providing that a claimant must "demonstrate that the physical stimulus caused the injury").

8

In the present case, Claimant alleges that she "suffered a very minor physical injury which consisted of tiny insects jumping on her as well as a rash." (Claimant's brief at 19.) However, Claimant presented no medical evidence establishing that she had a rash or that any such rash was related to the springtail bugs. Indeed, Dr. Blumenthal acknowledged that she had not reviewed Claimant's prior medical records. Claimant's testimony constituted the only evidence of a rash and this testimony was rejected by the WCJ as not credible. Hence, Claimant could not establish the first prerequisite for a physical/mental claim.

Claimant's reliance on this Court's previous decision in *New Enterprise Stone & Lime Co. v. Workers' Compensation Appeal Board (Kalmanowicz)*, 59 A.3d 670 (Pa. Cmwlth. 2012), is misplaced. In that case, the claimant was a tractor-trailer driver who was involved in a head-on collision with a vehicle which resulted in the death of the vehicle's driver. Authorities later determined that the driver of the vehicle was suicidal and purposely caused the accident. The claimant refused medical treatment at the scene but was later transported to a local emergency room by a co-worker where he received treatment for minor contusions to his chest and right wrist.

Approximately nine months later, the claimant began treatment for PTSD, and returned to work as a laborer at a lower hourly wage. The claimant filed a claim petition and was eventually awarded benefits for a physical/mental injury with the accident serving as the "triggering physical event." *Id.* at 673. The Board affirmed, as did this Court. The employer appealed, alleging that the Board erred by applying the standard related to a physical/mental injury, as opposed to a mental/mental injury, and that the claimant failed to prove either. The employer specifically alleged that "a physical/mental injury cannot be established based upon

9

fear of serious injury and knowing that someone died, but [the claimant] must also have suffered physical injuries that required medical treatment." *Id.* This Court ultimately held that the claimant suffered a physical stimulus in the form of the head-on collision resulting in the death of the other driver, which was sufficient to support an award of benefits for a physical/mental injury. However, we neglected the general requirement that a physical/mental claim be precipitated by a physical injury and the fact that the claimant therein did indeed suffer physical injuries as a result of the head-on collision.

Recently, in *Murphy*, we clarified any misunderstandings regarding our holding in *Kalmanowicz*. We noted in *Murphy* that this Court in *Kalmanowicz* "did not fully analyze or address the issue of whether a physical injury requiring medical treatment was necessary to apply the physical/mental standard" and stressed that the claimant in *Kalmanowicz* had suffered contusions to his chest and right wrist. *Murphy*, 110 A.3d at 237 n.10. We specifically rejected an argument by the claimant in *Murphy* that the term "physical stimulus" does not require a claimant to suffer a physical injury. To the contrary, we held that although the physical injuries themselves need not be disabling, "their presence or lack thereof, and their relationship to the mental injury is determinative to whether the physical/mental standard applies." *Id.* at 237. Thus, it is clear that the physical/mental standard requires a physical injury, even if minor, as a prerequisite to establishing a claim. Claimant in this case failed to meet that standard.

Next, Claimant argues that the Board erred in failing to treat this injury as a mental/mental injury and address Claimant's abnormal working conditions. Again, we disagree.

10

Claimant relies on our Supreme Court's decision in *Payes v. Workers' Compensation Appeal Board (Commonwealth PA State Police)*, 79 A.3d 543 (Pa. 2013), for support of this argument. However, Claimant's reliance is again misplaced. The claimant in *Payes* was a state trooper who struck and killed a mentally disturbed woman who ran in front of his patrol car on a dark road, wearing all black, apparently to commit suicide. The claimant did not suffer any physical injuries, but later developed PTSD which prevented him from returning to work. The claimant filed a claim petition, which was granted by the WCJ. The WCJ credited the testimony of the claimant and his medical experts. The Board reversed, and this Court affirmed, concluding that while the events were unusual, they were not abnormal in terms of a state trooper's highly stressful job. Our Supreme Court reversed and reinstated the WCJ's decision, concluding that the event was not part of a trooper's normal working conditions, but instead was "a reaction to a highly unusual and singular event" that resulted in a psychic injury to the claimant. *Id.* at 556.

Claimant suggests that the infestation of springtail bugs can never be considered a normal working condition and points to the testimony of Dr. Blumenthal, which she describes as "unequivocal and unrebutted," (Claimant's brief at 22), that relates her mental injuries to the events at her workplace. Claimant also emphasizes the Board's acknowledgement that the WCJ failed to address her claim as a mental/mental injury. However, as the Board noted, the WCJ rejected the testimony of Claimant and her medical expert, Dr. Blumenthal, as not credible. Thus, Claimant could not meet her burden of establishing "any mental injury resulting from any work-related stimulus." (Board op. at 7.)

11

Claimant proceeds to challenge the reasons underlying the WCJ's rejection of Dr. Blumenthal's testimony. Section 422(a) of the Act provides, in pertinent part, that:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834. However, we have previously held that this section "does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, the WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007).

In this case, the WCJ presented ample reasons as to why he rejected the testimony of Dr. Blumenthal, including that she was not aware of Claimant's purported rash that precipitated her mental injury; she did not review Claimant's medical records relating to a skin condition; she opined that Claimant was capable of working full time during her entire course of treatment, May 2012 through March 2013; she did not review any medical records relating to Claimant's prior

psychological treatment; and she was unaware that Claimant had been prescribed medication. Thus, the WCJ's decision comported with section 422(a) of the Act and Claimant's challenge to the WCJ's credibility determination with respect to the testimony of Dr. Blumenthal is without merit.

Finally, Claimant argues that the Board erred by not awarding counsel fees for Employer's purported unreasonable contest and by not awarding penalties after the WCJ found that Employer had violated the Act. Employer contends that Claimant waived these issues by failing to raise them in her appeal to the Board. We agree with Employer.

In her appeal to the Board, Claimant only alleged that the WCJ erred by: failing to make any finding "regarding an abnormal working environment" and, thus, failed to issue a reasoned decision; rejecting the opinions of Dr. Blumenthal in the absence of opposing opinions; and holding that she suffered no injury in light of the unrebutted testimony and evidence. Claimant's failure to raise the issues of unreasonable contest counsel fees and penalties constitutes a waiver of those issues on appeal. *See* Pa.R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit. . . ."); *Marx v. Workers' Compensation Appeal Board (UPS)*, 990 A.2d 107, 111 (Pa. Cmwlth. 2010) (issues not raised before the Board are waived).

Even if not waived, Claimant's arguments would fail. Section 440 of the Act provides for the award of counsel fees for an unreasonable contest only to a claimant "in whose favor the matter at issue has been finally determined in whole or in part. . . ." 77 P.S. §996(a).[6] Claimant was not successful before the WCJ or the Board; hence, she is not entitled to counsel fees. Claimant suggests that Employer's

---

[6] Section 440 was added by the Act of February 8, 1972, P.L. 25.

13

failure to present any evidence renders its contest *per se* unreasonable. Claimant relies on *Kuney v. Workmen's Compensation Appeal Board (Continental Data Systems)*, 562 A.2d 931 (Pa. Cmwlth. 1989), *appeal denied*, 589 A.2d 694 (Pa. 1990), for support. However, Claimant's reliance is misplaced, as *Kuney* does not stand for that proposition. The focus of our opinion in *Kuney* was the *post hoc* medical evidence obtained and presented by the employer therein.

We noted in *Kuney* that the record showed that claimant had no ability to work given his restrictions and the employer's contest was not supported by evidence or any reason other than an intention to continue investigating the matter, which resulted in the securing of inadequate medical evidence. In reviewing the testimony of the employer's medical expert, we noted that the expert's statements confirmed that the claimant could not resume full working capacity for the employer.

In the present case, the burden was on Claimant to establish that she suffered a compensable work injury. Upon review of the testimony of Claimant and Dr. Blumenthal, Employer believed, correctly so, that Claimant had not met her burden and opted not to present any evidence. Employer's decision does not constitute a *per se* unreasonable contest.

Likewise, Claimant was not entitled to an award of penalties. Section 435(d)(i) of the Act states that:

> The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
>
> (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty

14

> may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. §991(d)(i).[7]   By its very language, this section requires that a claimant establish entitlement to workers' compensation benefits as a precondition to an award of penalties.  *See aslo Zuchelli v. Workers' Compensation Appeal Board (Indiana University of Pennsylvania)*, 35 A.3d 801, 807 n.5 (Pa. Cmwlth. 2011) ("a precondition to the imposition of penalties is the determination that a claimant is entitled to workers' compensation") (citation omitted).   While Claimant cites a number of cases in support of her argument, none of these cases presented a factual situation such as here where no benefits were awarded.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Section 435(d)(i) was added by the Act of February 8, 1972, P.L. 25.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruthann Pruzinsky,               :
           Petitioner      :
                          :  No. 849 C.D. 2015
         v.             :
                          :
Workers' Compensation Appeal  :
Board (Mercy Catholic Medical   :
Center of Southeastern Pennsylvania),  :
           Respondent    :

## _**ORDER**_

AND NOW, this 9th day of March, 2016, the order of the Workers' Compensation Appeal Board, dated May 5, 2015, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge