**Delilah ANDERSON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WASHINGTON GREENE ALTERNATIVE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 20, 2004.

Decided Oct. 25, 2004.

Mark C. Stopperich, Washington, for petitioner.

James P. Liekar, Canonsburg, for respondent.

BEFORE: COLINS, President Judge,
COHN JUBELIRER, Judge,
FLAHERTY, Senior Judge.

OPINION BY Senior Judge
FLAHERTY.

Delilah Anderson (Claimant) appeals from a decision of the Workers' Compensation Appeal Board (Board) which reversed the decision of a Workers' Compensation Judge (WCJ) finding that she was exposed to abnormal working conditions and granting her benefits for a mental injury. We affirm.

Claimant filed a Claim Petition alleging that, while working for Washington–Greene Alternative (Employer) on August 28, 1995, she suffered a panic attack and that she continues "to experience panic attacks due to her work duties. Claimant has physical symptoms: chest pain, headaches, heart palpitations, breathing difficulties and upset stomach." Employer filed an Answer denying the allegations set forth in the Claim Petition.[1] Thereafter, hearings were held before a WCJ.

At the hearings, Claimant testified that she worked as a residential program worker in a group home for seven years and that her job was to take care of six mentally and physically handicapped young adults. Claimant stated that the residents

of this home, which she referred to as her clients, "are physically aggressive, they are verbally aggressive, and they're unpredictable. They can lose control at any time." (N.T. 4/18/1996, p. 9). Claimant further stated that "[t]hey are all combative. And they all have the potential to be very dangerous" and that she has been working with combative mentally handicapped patients for seven years. (N.T. 4/18/1996, p. 30). Claimant also related that she has had physical confrontations with her clients in the past. In particular, Claimant testified that she was injured in 1991 and 1993 and received workers' compensation benefits for her injuries. (N.T. 1/11/2001, p. 11–12). With regard to the incident that occurred on August 28, 1995 which she alleges caused her mental injury, Claimant stated that the following occurred:

The day started out. We got our clients up for the day program as normal. I was working with two combative clients that morning. And the one client that I worked with, I had been injured by before. He is mentally handicapped, but he is physically not. I had a difficult morning with him and the other client all morning, and called for assistance from Cindy Peterson [overseer of the group home] ... who said that she was busy and she really wanted me to try to handle this on my own, that she didn't want to come over.

. . .

And so I went back and I tried to work the client some more and tried to get him to be cooperative and tried to get him to calm down and not to be pushing, and shoving, and hitting at people. I finally got him — I couldn't get him to calm down and couldn't get him in the

1. Before Claimant filed her Claim Petition, Employer filed a Notice of Workers' Compensation Denial which stated that: "It is not conclusive that your disability condition is due to a work-related injury."

van. So I called Cindy back, she was irritated, but she came over. And at that time, I had gotten the resident into the van. And he did ride safely to the day program.

At that point, we dropped our clients off at the day program, and we came back to the house — on the way back to the house, I experienced, in the van, that I couldn't breathe ... My heart was pounding a lot. And I actually thought I was having a heart attack.

(N.T. 4/18/1996, pp. 12–13). Claimant was not able to work the remainder of her shift that day. Claimant sought treatment from her family doctor who referred her to Oscar Urrea, M.D., whom she saw a few days later. After seeing Dr. Urrea, Claimant started taking the prescription medications Prozac and Ativan.

After the incident described above, Claimant returned to work the next day, but was not able to complete her full shift. Thereafter, other incidents occurred. In particular, Claimant described the following incident which occurred on September 8, 1995:

I had one client — I was in the middle seat, there was a client behind me, there's a client in front of me who I had in a basket hold. She was biting and kicking. My co-worker had her legs. And then, the client in the front seat became aggressive and combative and she was trying to reach back and grab my hair, and she was spitting blood at us. And the client in the back of me kept pulling at my hair and pulling at my blouse, at which time I became very upset and I needed to get out of the van, but I couldn't get out of the van.

(N.T. 4/18/1996, p. 18). After this incident, Claimant testified that she did not return to work. Following this testimony, Claimant's attorney amended the Claim Petition

to allege a second injury date of September 8, 1995.

At a hearing on November 8, 1996, Claimant stated that she did not expect to encounter combative patients when she was hired. Claimant further stated that the combative behavior of her clients changed around 1990 or 1991 "whenever their behavior plans were upgraded and their learning goals were upgraded ... they're not very used to change ... and that's whenever things started to get a little bad. With each upgrade, things got worse." (N.T. 11/08, 1996, pp. 13–14).

In support of the Claim Petition, Claimant also presented the testimony of Dr. Urrea, a board-certified psychiatrist who began treating Claimant on August 28, 1995. Dr. Urrea testified that Claimant suffers from a major depressive disorder and anxiety disorder. When asked whether there was a link between Claimant's condition and her job, Dr. Urrea stated that:

There is a link, because I just previously stated ... I expect her to go back to work but not to that job. So that obviously implies that here is a connection between her symptoms now on her job.

In my opinion, if you subject this lady to a confrontation with her previous duties, being that to have to do one-to-one with kids who have attacked her, abused her and physically injured her, that would create a psychological situation that she can't handle, panic, depression, fear, simply overwhelming fear.

(N.T. 7/01/1996, pp. 15–16).

In defense of the Claim Petition, Employer presented the testimony of Cindy Peterson, Candy Selvoski and Daeneen Patterson. Ms. Peterson works for Employer as a qualified mental retardation professional supervisor. Ms. Peterson testified that when Claimant was hired she was informed that mentally impaired

clients can and will become combative and that Claimant was provided with training in how to deal with combative clients. However, Ms. Peterson did state that:

> direct physical attack is not common at all ... The clients do not generally directly go after a staff person. The staff person may get hurt if a client is wrist biting or banging their head or throwing [themselves] to the floor and, you know, hurting themselves they become restrained. And at that time sometimes staff get hurt. Most generally at that house clients are not directly going after staff ...

> ... clients do not commonly at all go after staff to harm them, to attack as you would say. The incidents where staff are harmed, bitten, scratched, whatever, primarily occurs when something — when the client has hurt themselves or gone after another client. And the staff is intervening and kind of caught in the middle and they may get bitten or kicked or him in that altercation.

(N.T. 10/25/1996, p. 24–26).

Ms. Selvoski works for Employer as a residential manager. She also testified when Claimant was hired she was told that clients may become combative. She estimated that situations that could be considered combative "could be one or more a week, it might be two a week, it could be more, you know, but it's frequent." (N.T. 10/25/1996, p. 14). Ms. Selvoski also testified that "yearly we have the mandatory inservices for training — especially in behavior management when we deal with behaviors, combative behavior." (N.T. 10/25/1996, p. 20). Ms. Patterson, who works for Employer as a residential program operator, also testified that combative incidents "would vary to maybe three to four a week" and that the staff was trained to deal with combative patients. (N.T. 10/25/1996, p. 14).

At the November 8, 1996 hearing, Claimant testified that she disagreed that she was informed that mentally handicapped patients can and do become aggressive and that "whenever I was hired, what Candy had told me was the house was going to be a house without combative clients." (N.T. 11/08/1996, p. 19). However, Claimant did state that she received training in how to deal with combative clients "[s]omewhere within the first year of our work." (N.T. 11/08/1996, p. 25).

By decision dated March 10, 1997, the WCJ accepted the testimony of Claimant and Dr. Urrea as credible. The WCJ found that Claimant suffered a physical trauma which caused a psychological or nervous injury. As such, the WCJ concluded that Claimant's Claim Petition should be analyzed under the physical/mental standard and that under that standard Claimant did not need to prove that she was exposed to abnormal working conditions. Accordingly, the WCJ granted Claimant's Claim Petition. Employer appealed to the Board, which reversed the decision of the WCJ. The Board concluded that the record did not indicate that either of the two incidents described by Claimant caused a physical disability or even a treatable injury. Accordingly, the Board remanded this case to the WCJ and directed that Claimant's claim for benefits be evaluated under the mental/mental standard. The Board also directed that the WCJ make a factual determination as to whether Claimant was exposed to abnormal working conditions.

On remand, this case was assigned to another WCJ. By decision dated April 11, 2002, the WCJ found that "claimant was exposed to abnormal working conditions which caused her psychiatric injury on or about September 11, 1995. In find-

ing that there were abnormal working conditions, I have taken into account Ms. Peterson's testimony that the direct physical attack of a residential program worker by a client is not common." (Finding of Fact No. 10). The WCJ also accepted Claimant's testimony as credible over that of Employer's lay witnesses because Employer's witnesses did not address the question of whether the goals for the residents increased over time such that they exhibited more combative behavior. (Finding of Fact No. 8). Accordingly, the WCJ granted Claimant's Claim Petition. Employer appealed to the Board, which again reversed the WCJ. The Board stated that "Claimant failed to prove that her post-traumatic stress and panic disorder, while real and upsetting to her, meets the burden of an abnormal work circumstance ... the circumstance, though infrequent and possibly even rare, was, nevertheless, the foreseeable behavior of the impaired individuals she supervised." (Board's decision, p. 11). Claimant's appeal to this Court followed.[2]

On appeal, Claimant argues that: 1) the Board erred as a matter of law in concluding that Claimant's Claim Petition should be evaluated under the mental/mental standard rather than the physical/mental standard and 2) the Board erred as a matter of law in concluding that Claimant was not exposed to abnormal working conditions.

▪ It is well-settled that there are three distinct categories in Pennsylvania workers' compensation law where a mental injury is involved: 1) "mental/physical" where a mental stimulus causes a physical injury, 2) "physical/mental" where a physical stimulus causes a mental injury and 3)

"mental/mental" where a mental stimulus causes a mental injury. *Bogdanski v. Workers' Compensation Appeal Board (City of Pittsburgh)* 813 A.2d 949, 952 (Pa.Cmwlth.2002). These distinctions are important because in "physical/mental" cases where a physical stimulus causes the mental injury, the claimant only has to show causation between the physical stimulus and the mental injury in order to receive benefits. *Id.* However, when a mental injury causes either a mental or physical injury in "mental/mental" and "mental/physical" cases, the claimant has the burden of proving that he was exposed to "abnormal working conditions." *Id.* Whether a workers' compensation judge's findings of fact support a conclusion that the claimant was exposed to abnormal working conditions is a question of law that is fully reviewable on appeal. *City of Pittsburgh v. Logan,* 570 Pa. 500, 506, 810 A.2d 1185, 1188 (2002).

In *Cantarella v. Department of Corrections,* 835 A.2d 870 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 578 Pa. 702, 852 A.2d 313 (2004), a state correctional facilities food service instructor claimed that she suffered from post-traumatic stress disorder after an inmate rubbed her buttocks. The claimant further argued that this event was an extraordinary event that should be considered an abnormal working condition. In considering the claimant's argument, we noted that:

A claimant who alleges that she sustained a mental injury needs to prove by objective evidence that her injury is other than a subjective reaction to normal working conditions. *Martin v. Ket-*

**2.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

*chum*, 523 Pa. 509, 568 A.2d 159 (1990). In so proving, the claimant must demonstrate either: (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by him or her; or (2) that abnormal conditions over a longer period of time caused the mental injury. *U.S. Airways v. Workers' Compensation Appeal Board (Long)*, 756 A.2d 96 (Pa. Cmwlth.2000), *petition for allowance of appeal denied*, 565 Pa. 659, 771 A.2d 1293 (2001). Furthermore, because psychiatric injury cases are highly fact-sensitive, "in determining whether actual working conditions are abnormal, they must be considered in the context of the specific employment." *U.S. Airways*, 756 A.2d at 101.

*Id.* 873. In rejecting the claimant's argument that she was exposed to abnormal working conditions, we noted that people who work in correctional facilities subject themselves to the dangers that come with being around dangerous people. In addition, we cited the Supreme Court's decision in *Logan* for the proposition that it will always be difficult for a person in a profession where dangerous conditions are normal to prove abnormal working conditions.

In *Pittsburgh Board of Education v. Workers' Compensation Appeal Board (Schulz )*, 840 A.2d 1078 (Pa.Cmwlth.2004), the claimant sought benefits for a mental injury that he suffered after he was hit on the side of the head with a heavy object while performing his duties as a teacher. The employer argued that the *Cantarella* case was controlling because the claimant suffered a mental/mental injury and therefore the claimant had the heavier burden of proving that he was subjected to abnormal working conditions. Specifically, the employer argued that the triggering event for the claimant's mental injury was de minimis and that he was not injured. In

rejecting the employer's argument, we stated that:

> After Claimant was hit, the side of his head swelled, and he sought treatment at the hospital. Such an event cannot be characterized as de minimus [sic]. Clearly, the touching that was involved in *Cantarella* did not result in a **physical** injury. We agree with the Board's conclusion that the standard applicable to cases involving mental injury caused by physical stimulus applies to Claimant's case. As stated by the Board, a claimant who suffers a mental injury that arose from a physical stimulus only needs to establish that the injury arose in the course of employment and is related to the physical stimulus. *Bell v. Workmen's Compensation Appeal Board (Allegheny County Housing Authority)*, 152 Pa.Cmwlth. 636, 620 A.2d 589 (1993).

*Id.* at 1081 (emphasis in original).

Another case in which this Court distinguished between the mental/mental standard and the physical/mental standard is *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty )* 739 A.2d 1156 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 563 Pa. 678, 759 A.2d 924 (2000). In that case, the claimant was a janitor who suffered a mental injury after being exposed on three occasions to hypodermic needles that were not properly disposed of in a dentist's office which he was cleaning. On appeal, we noted the Board's glaring error in categorizing the claimant's injury as mental/mental rather than physical/mental because on two of the three occasions, Claimant was actually stuck by the needle and he received medical treatment for that physical injury in the nature of booster shots and blood work. This Court further stated that "[a] claimant need not prove that he

or she suffered a physical *disability* that caused a mental disability for which he or she may receive benefits. Nor must a claimant show that the physical injury continues during the life of the psychic disability. Rather, a claimant need only show that a physical *stimulus* resulted in a mental disability." *Id.* at 1161 (emphasis in original). We further noted that, even if the claimant's claim for benefits were analyzed under the mental/mental standard, he would still be entitled to benefits. In particular, we stated that:

> We find to be astonishing, if not outrageous, the rather cavalier suggestion, inferred by the WCJ and the Board and advanced by Employer in its argument, that exposure to and wounding by improperly disposed of hypodermic needles are simply part of the normal working conditions of janitors in medical offices. Indeed, the very fact that such experiences are not to be expected or tolerated is conceded by Employer in its letter to the dentist admonishing him for his actions and reminding him that his improper disposal of needles and other medical waste is in violation of the law.

*Id.* at 1163.

■ In this case, as in *Cantarella*, although there was some physical contact between Claimant and her clients during the incidents that occurred on August 28, 1995 and September 8, 1995, she did not suffer any physical injury that required medical treatment. Furthermore, this contact was a normal and expected part of her job for which she was trained, which is unlike the situation in *Donovan* where the claimant's exposure to improperly disposed of hypodermic needles was not expected and was not something to be tolerated. Also, like in *Cantarella*, Claimant worked in an occupation with people who she admits "are physically aggressive, they are verbally aggressive, and they're unpredict-

able. They can lose control at any time." (N.T. 4/18/1996, p. 9). As such, like *Cantarella*, this case is more properly analyzed under the mental/mental standard and, therefore, Claimant must prove that she was subjected to abnormal working conditions. Accordingly, the Board did not err by reversing the first WCJ's decision and remanding this case to the WCJ for more findings on this issue.

■ Having determined that this is a mental/mental case rather than a physical/mental case, we must now determine whether Claimant was subjected to abnormal working conditions. We believe that the WCJ erred when he relied on Ms. Peterson's testimony that direct physical attacks are not common as his basis for concluding that Claimant was exposed to abnormal working conditions. First, just because an event is not common does not necessarily mean that when that event occurs it is abnormal. The testimony of all three of Employer's witnesses, as well as Claimant's own testimony, reveals that combativeness from the mentally handicapped clients was a situation that that employees were trained to deal with precisely because such conduct was foreseeable and anticipated. Although Claimant testified that when she was hired she was told she would not have to deal with combative clients, the fact that she admits she was provided with training in how to deal with combative clients as well as her statement that she dealt with combative clients for the entire seven years of her employment shows that dealing with combative clients was a normal part of her job. As such, Claimant's exposure to combative behavior from the mentally handicapped clients cannot be considered an abnormal working condition in this case.

Second, a reading of Ms. Peterson's entire testimony indicates that she meant that *direct* physical attacks upon employ-

ees by mentally handicapped clients was rare. However, situations where physical force had to be used to restrain unruly clients was a situation that occurred at least weekly, a fact that was confirmed by both Ms. Selvoski and Ms. Patterson and by Claimant's own testimony. In addition, the situation as described by Claimant that occurred on August 28, 1995 was not a direct physical attack. Rather, this was a situation where Claimant was involved in restraining an unruly client. This is the type of situation that was foreseen, anticipated and trained for in Claimant's occupation. As such, this would not be an abnormal working condition. The second situation as described by Claimant that occurred on September 8, 1995 also involved the restraint of an unruly client but also involved some combative conduct that was directed at Claimant. However, Claimant did not suffer any physical injury as a result of this incident. Even though this type of situation may have been more rare than the first one, we cannot say that it rises to the level of being abnormal. This situation as well as the first one is of the type that was foreseen, anticipated and trained for in Claimant's occupation.[3] As such, we conclude that, as a matter of law, Claimant was not subjected to abnormal working conditions and therefore her mental injury is not compensable under the Workers' Compensation Act.[4]

Accordingly, the decision of the Board is affirmed.

## ORDER

AND NOW, October 25, 2004, the order of the Workers' Compensation Appeal Board docketed at A02–1222 and dated February 10, 2004 is hereby AFFIRMED.

---

**3.** As to the injuries that Claimant testified occurred in 1991 and 1993, we do not believe that these are relevant to this case. The Claim Petition mentions only the August 28, 1995 incident and was subsequently modified to include only one other incident that occurred on September 8, 1995. In addition, Claimant previously received workers' compensation benefits for the 1991 and 1993 injuries and has not sought a modification for the purposes of receiving benefits for a mental injury related to these events.

**4.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2606.