Kevin KENNELTY, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (SCHWAN'S HOME SERVICE, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.
Decided May 31, 2006.

Jon M. Lewis, Greensburg, for petitioner.

Lisa K. Lane, Wexford, for respondent.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Kevin Kennelty (Kennelty) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the order of the Workers' Compensation Judge (WCJ) denying and dismissing Kennelty's claim petition alleging a psychic injury.

Kennelty was employed by Schwan's Home Service, Inc. (Employer) from February, 2003 until September 18, 2003, as a route manager/driver. His job involved driving Employer's vehicle to customers' homes and selling food products. In the course of his employment, Kennelty was also required to contact customers to collect payment for bad checks or food stamp cards. Kennelty was robbed at gunpoint in the Garfield section of Pittsburgh, on September 18, 2003, while delivering food in the course of his employment, and he never returned to work for Employer after the incident. On November 7, 2003, Kennelty filed a claim petition alleging that as of September 18, 2003, he sustained a work-related injury in the nature of depression, anxiety, post-traumatic stress syndrome, and mental disabilities due to being involved in five or six robbery incidents. In its answer, Employer denied Kennelty's allegations.

Kennelty, who had been laid off from his job as a welder, was first robbed in April, 2003, approximately one month after he began working for Employer. In that incident, $500.00 worth of products was stolen. On another occasion, in June, 2003, the police became involved when Kennelty attempted to collect on a bad check. Kennelty testified that on at least two other occasions he reported to Employer receipt of a bad food stamp card for which he was unable to collect. On September 16, 2003, Kennelty reported an attempted robbery to Employer, and he indicated to Employer at that time that he had also been threatened.[1] Finally, on September 18, 2003, a young man attempted to rob Kennelty at gunpoint. Kennelty escaped his assailant, and the police were called. Following this incident, Kennelty sought treatment for anxiety, depression, panic attacks, and nightmares. Kennelty's treatment included placement in a partial hospitalization program for three weeks, followed by a one-week hospitalization during which his medications were monitored, and subsequent intensive outpatient therapy by various doctors and therapists. In February, 2004, Kennelty returned to work at Aerotek Commercial Staffing, and in April, 2004, he was recalled to the welding job from which he had originally been laid off.

In support of the claim petition, Kennelty offered the reports of both a psychologist and a psychiatrist who treated him, as well as a report from his long-time primary care physician. The psychiatrist, Dr. Nirmal Kathuria, M.D., attributed Kennelty's Major Depressive Disorder to the accumulation of five or six traumatic exposures. Dr. Kathuria treated Kennelty for a period from four days following the incident until November, 2003. In his report, he noted that the history indicates that Kennelty had depression on one other occasion in his life, after his mother's death, but that he has not required any treatment since then. The psychologist, Gerald E. Surmacz, Ph.D., referenced Dr. Kathuria's diagnosis, and similarly opined that Kennelty's condition resulted "from the cumulative effect of work's stress in a constantly dangerous environment where he was robbed on different occasions, once by an attacker." (R.R. at p. 56). Dr. Edward J. Garofolo, M.D., the primary care physician, reported that Kennelty's post-traumatic stress disorder occurred when he "encountered several episodes where he was robbed at gunpoint and had supplies stolen from the rear of his truck." (R.R. at p. 58).

1. Kennelty testified that in June, 2003, he was pulling food products from the back of the truck when some men attempted to steal items. When his customer emerged from her home and yelled at the men, they returned the items to the truck, and said, "we'll get you MF, your time is coming," and "we're going to get you." (R.R. at p. 33).

In opposition to Kennelty's claim petition, Employer offered the deposition testimony of two employees, a route manager/driver and a sales supervisor. Each testified as to Employer's policy of instructing employees not to fight back when robbed, and as to the frequency of robberies and attempted robberies in the low-income housing areas in which they had been assigned.

The WCJ found Kennelty's testimony to be credible; however, the WCJ found that Kennelty failed to establish that he was exposed to stress due to abnormal working conditions,[2] noting that Employer's employees credibly testified that all drivers are at risk for robbery and theft, the receipt of bad checks is a routine business expense, and all drivers are expected to contact customers regarding bad checks and food stamp cards. (WCJ Finding of Fact No. 14). Further, the WCJ found that Drs. Kathuria, Surmacz, and Garofolo were not persuasive, since Kennelty admitted on cross-examination that he had, in fact, obtained prescriptions from his primary care physician, Dr. Garofolo, for treatment of depression and/or anxiety off and on since July, 2001. Thus, noted the WCJ, since neither Dr. Kathuria nor Dr. Surmacz mentioned such earlier treatment for depression, their diagnoses were not based upon an accurate history. The WCJ also found that the primary care physician's characterization of incidents that occurred during Kennelty's employment as a route driver was inaccurate (the WCJ noted that Kennelty was robbed at gunpoint on just *one* occasion, not *several occasions*), and Dr. Garofolo's report did not discuss what effect Kennelty's problematic relationship with his girlfriend was having on him during this time period. (WCJ Finding of Fact No. 15c).

The Board affirmed the decision of the WCJ, noting that it did not have to consider the difficult question of whether being robbed at gunpoint qualifies as an abnormal working condition, since no competent medical testimony exists to support Kennelty's contention that he sustained a work-related mental injury. In its decision, the Board noted:

> Here, none of Claimant's three treating doctors was made aware of his significant history for treatment of mental health issues such as anxiety, depression and panic attacks from 2001 to 2003. Claimant even admits that he continues to experience similar symptoms partially as a result of problems with his girlfriend. As such, without competent medical testimony to support he sustained a work-related mental injury, Claimant was unable to meet his burden of proof on the Claim Petition.

(Board Opinion, at p. 2.)

On appeal, Kennelty raises three issues for our review.[3] First, Kennelty avers

---

**2.** A claimant who seeks an award of benefits has the burden of establishing the right to compensation and proving all elements necessary to support this award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). To be eligible for compensation, a claimant must prove that the injury was suffered while he was in the course of employment and that the injury was related to, that is, causally connected to the unemployment. *Paper Products Co., Inc. v. Workmen's Compensation Appeal Board (Kirin)*, 67 Pa.Cmwlth.577, 448 A.2d 652 (1982). Where a psychic injury is claimed, regardless of whether it is manifested through psychic symptoms alone or physical symptoms as well, the claimant must establish that the injury arose from abnormal working conditions in order to recover benefits. *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000).

**3.** Our review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *ABF Freight*

that the Board erred in upholding the WCJ's decision to deem the medical evidence "not persuasive" for lack of sufficient medical history. Second, Kennelty argues that even though the Board stated that it did not have to reach the issue of "abnormal working conditions," the Board made numerous references to the fact that Kennelty had been advised of the possibility of robbery by Employer, and other employees had been victims of robberies, both armed and unarmed, with no ill effect. Kennelty argues that he has established abnormal working conditions given the number and nature of experiences with theft and robbery reported and, those experiences aside, that the occurrence of one gunpoint incident is enough to establish his claim. Finally, Kennelty asks this Court to award him attorneys' fees and costs because Employer's contest was unreasonable.

■ Here, the Board erred in determining that Kennelty's medical evidence was insufficient as a matter of law. Our review of the proceedings, in particular Kennelty's extensive cross-examination testimony as to his medical history; the report by Kennelty's primary care physician, who himself prescribed the medications for depression that may have been taken by Kennelty during the five-year period prior to September, 2003; and the recognition of Kennelty's prior history of depression by the psychiatrist, Dr. Kathuria, constitute substantial evidence of the legal sufficiency of the medical evidence. Our Supreme Court has stated that a medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information. *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997). It is well established that the opinion of a medical expert must be viewed *as a whole*, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies. *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391 (Pa.Cmwlth.2001) (citing *Deitrich v. Workmen's Compensation Appeal Board (Shamokin Cycle Shop)*, 136 Pa.Cmwlth.557, 584 A.2d 372 (1990)). In the case *sub judice*, competent medical evidence exists to support Kennelty's claim that he sustained a work-related mental injury; his burden of proof has been met.

■ We next address the conclusion of the WCJ that Kennelty failed to establish that the stress encountered by him was due to abnormal working conditions for his position as a delivery driver.[4] The burden of showing that an injury is not simply a subjective reaction to normal working conditions can be met by establishing "either (1) that actual extraordinary events occurred at work, which can be pinpointed in time, causing the trauma experienced by him; or (2) that abnormal working conditions over a longer period of time caused the mental injury." *U.S. Airways v. Workers' Compensation Appeal Board (Long)*, 756 A.2d 96, 101 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 565 Pa. 659, 771 A.2d 1293 (2001). Further, because psychiatric injury cases are highly fact-sensitive, "in determining whether actual

*Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 568 Pa. 667, 795 A.2d 979 (2000).

4. Whether a claimant has been subjected to abnormal working conditions so as to permit the claimant to recover benefits for purely psychiatric disability is a mixed question of law and fact, fully reviewable by this court on appeal. *Antus v. Workmen's Compensation Appeal Board (Sawhill Tubular)*, 155 Pa. Cmwlth.576, 625 A.2d 760 (1993), *affirmed without opinion*, 536 Pa. 267, 639 A.2d 20 (1994).

working conditions are abnormal, they must be considered in the context of the specific employment." *U.S. Airways,* 756 A.2d at 101.

 This Court has repeatedly recognized that certain jobs, for example, the job of a police officer, are inherently highly stressful.[5] We have established that for a high stress working environment such as a police department, to constitute a legally sufficient abnormal working condition, there must be a finding either that a claimant's work performance (as distinguished from the mere job description) was unusually stressful for that kind of a job or a finding that an unusual event occurred making the job more stressful than it had been. *City of Scranton v. Workmen's Compensation Appeal Board (Hart),* 136 Pa.Cmwlth.483, 583 A.2d 852, 856, (1990), *petition for allowance of appeal denied,* 528 Pa. 625, 597 A.2d 1154 (1991). We have noted that employees of a correctional facility are trained in defense techniques, and aware of the dangers inherent in working around inmates; thus, an assault on a food service instructor in a correctional facility did not rise to the level of abnormal working condition. *Cantarella v. Department of Corrections/SCI at Waymart,* 835 A.2d 870 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 578 Pa. 702, 852 A.2d 313 (2004). We have stated that an individual working with the "Mayor's Task Force on Youth Violence" should have realized that conflict, or perhaps even some slight element of danger

or unrest might be involved. *City of Pittsburgh v. Workers' Compensation Appeal Board (Plowden),* 804 A.2d 82 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied,* 572 Pa. 750, 816 A.2d 1103 (2003). But this Court is unprepared to accept that our society has deteriorated to the point where a holdup at gunpoint does not constitute an "abnormal working condition" for a food delivery person.

We conclude that competent medical evidence exists to support his claim that he sustained a work-related mental injury, and that Kennelty was exposed to legally sufficient abnormal working conditions; therefore, we conclude that the Board erred in denying and dismissing the claim petition. Kennelty's request for attorneys' fees and costs is denied, as Employer's contest was reasonable. Accordingly, we reverse the Board's decision to affirm the decision and order of the WCJ, and remand to the Board for entry of the appropriate award.

### ORDER

**AND NOW,** this 31st day of May 2006, the decision of the Workers' Compensation Appeal Board is **REVERSED.** We remand this case to the Board for the computation of benefits.

Jurisdiction is relinquished.

---

5. *See City of Philadelphia v. Workmen's Compensation Appeal Board (Brasten),* 682 A.2d 875 (Pa.Cmwlth.1996), *affirmed,* 556 Pa. 400, 728 A.2d 938 (1999).